Appeal of PETERS MANUFAC-        Docket No. 2091.
TURING CO.

Submitted April 13, 1925; decided May 21, 1925.

*Henry H. Bond, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before TRAMMELL, PHILLIPS, and LOVE.

This appeal is from a determination by the Commissioner of a deficiency in income and profits taxes for the years 1918 and 1919 in the amount of $20,063.73. The deficiency arose from the disallowance of a deduction of $5,593.91, taken by the taxpayer in the year 1918 as ordinary and necessary business expenses, and of a deduction of $16,161.84 as an ordinary and necessary business expense in the year 1919, and the exclusion from invested capital of $77,839.09 for the year 1918 and $55,243.11 for the year 1919. A hearing was held and the case submitted on the pleadings and oral and documentary evidence, from which the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a corporation, organized in the year 1905 under the laws of the Commonwealth of Massachusetts, with its principal offices at Boston. It is now and has been since the date of its incorporation engaged in the manufacture of shoe findings.

In the year 1912 the taxpayer opened a branch of its business in New York City and installed and equipped a factory there. The branch was started with money advanced by the Boston office, it was operated as a separate business unit, although it was not separately chartered, and it kept and maintained separate books of account. The money advanced by the Boston office was carried as a loan on the books of the New York branch. The branch from time to time submitted to the Boston office statements of its operation and financial condition, as shown by its books. From these statements and the books of the Boston office the taxpayer prepared its yearly income-tax returns. The returns for the years 1918 and 1919 were made on that basis. The Boston factory and office were managed by Paul A. Peters and the New York branch by his brother, William F. Peters.

In the year 1918 the Government took over the building occupied by the New York branch and it was forced to secure other quarters. In the confusion incident to moving and securing other buildings, a part of its records and books of account were lost. However, in January, 1923, sufficient books and records relating to the business of the New York branch for the year 1917 were in existence to enable a revenue agent to determine its income and invested capital for that year. The revenue agent's report shows that the New York branch had a surplus of $68,572.59 on December 31, 1916, and a surplus of $81,000.02 on December 31, 1917, that the entire surplus of the taxpayer was $118,753.28 on December 31, 1916, and $116,531.10 on December 31, 1917, and that its invested capital for the year 1917 was $117,036.50, which amount was increased to $117,172.49 by the Commissioner.

Some time subsequent to the year 1919, Paul A. Peters purchased the interests of his brother in the corporation. The New York branch was abandoned in May, 1923. In December, 1923, a revenue agent attempted to make an audit of the taxpayer's books for the years 1918 and 1919. He secured the books of the Boston office and was informed by the officers of the corporation that the books of the New York branch were in New York. At New York it was claimed by former employees that they had been shipped to Boston. George L. Peters, son of William F. Peters, who had charge of the books up to the time the New York branch was abandoned, testified, by deposition recently taken, that he shipped part of the books to Boston to be audited by the revenue agent and sent part of them to his attorney in New York, and that he supposed they too had been shipped to Boston. At the time of the taking of the deposition of George L. Peters, the general ledger and the purchase ledger of the New York branch for 1919 were produced from the office of the attorneys for George L. Peters, but the taxpayer has not been able to find any of the other books or records of the New York branch for that year, although it has exercised due diligence so to do.

The taxpayer has established, by the testimony of persons who were familiar with and who examined the books of the New York branch for the year 1918, that the statements furnished by the branch to the Boston office were practically correct and, with a few adjustments which were made in preparing income-tax returns, accurately reflected the true condition of the branch, and that the branch had a surplus of about $81,000 on January 1, 1918, and of about $86,000 on January 1, 1919. The general ledger of the New York branch for 1919 shows that the taxpayer carried into that book a surplus of $86,013.99 at the beginning of the year. That surplus was, however, subject to adjustment for the purpose of invested capital.

Upon an audit of the taxpayer's return for the years 1918 and 1919 it was allowed for invested capital only the amount thereof shown by the books of the Boston office. This action resulted in reducing the invested capital for the year 1918 from $119,913.57 to $42,074.48, and for the year 1919 from $119,994.80 to $64,751.69. The surplus of the New York branch, for invested capital purposes, for 1918 was $77,839.09, and for 1919, $55,243.11. The Commissioner also increased the taxpayer's net income for the year 1918 by $15,593.91. The taxpayer alleged, but failed to show, that $5,593.91 of the increase in net income for .1918 is due to the disallowance of certain items of necessary and ordinary business expenses of the New York office. The Commissioner also disallowed deductions taken for expenses in the year 1919 in the amount of $16,161.84, and determined that there is a deficiency in tax for the years 1918 and 1919 in the amounts of $10,181.55 and $9,882.18, respectively. The taxpayer was notified of the Commissioner's determination by registered letter mailed December 22, 1924. The petition herein was filed February 18, 1925.

#### DECISION.

The amount of the deficiency should be computed in accordance with the following opinion and will be settled on consent or on ten days' notice, under Rule 50.

#### OPINION.

TRAMMELL: The taxpayer has failed to produce evidence to substantiate its contention with respect to the deductions claimed, and the Commissioner's action in respect thereto is therefore approved.

The only question with respect to invested capital is the amount of the surplus, if any, of the New York branch of the business. The books were lost or destroyed and the taxpayer has established by competent evidence the contents thereof so far as material to this appeal.

We are satisfied from the evidence that the New York branch had a surplus for invested capital purposes for 1918 in the amount of $77,839.09 and for 1919 in the amount of $55,243.11, as claimed by the taxpayer. These amounts should be added to the invested capital found by the Commissioner for the respective years.